IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-00748-LTB

DENNIS BORREGO,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

___

ORDER
___

Plaintiff, Dennis Borrego, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his February/March 2008 application for Social Security disability insurance benefits. [Administrative Record ("AR") 143] The application was initially denied at the administrative level. [AR 78] An Administrative Law Judge ("ALJ") subsequently conducted a hearing on January 25, 2010, and issued a written ruling on February 17, 2010, denying Plaintiff's application on the basis that Plaintiff was not disabled because he was capable of performing

work that existed in significant numbers in the national economy (Step Five). [AR 19-27]  On May 4, 2010, the SSA Appeals Council denied Plaintiff's request for reconsideration, making the denial final for the purpose of judicial review. [AR 1]  Plaintiff timely filed his complaint with this court seeking review of the SSA Commissioner's final decision.

## II.  FACTS

Plaintiff was born on October 12, 1956, and was 53 years old at the time of the ALJ's decision. [AR 34, 143]  He testified that he dropped out of high school in the twelfth grade. [AR 34-35]  His prior work history consists of:  forklift operator, order puller, municipal maintenance worker, and shipping/receiving clerk. [AR 25]  Plaintiff alleges that he became disabled on October 7, 2007, after he fell off a forklift at work and injured his back. [AR 37, 143]

The medical records reveal that Plaintiff injured himself during an accident at work on September 13, 2007. [AR 22, 37, 357]  Following the accident, Plaintiff was seen at a Workers' Compensation clinic, and was diagnosed with a left wrist, right ankle, and mid-thoracic back strain. [AR 356]  Directly after the accident, Plaintiff was told that he could return to work, but was limited to lifting no more than 10 pounds, no pushing and pulling greater than 15 pounds, and no prolonged standing or walking. [AR 296, 356]

Although his wrist and ankle pain resolved with physical therapy, Plaintiff continued to seek treatment for lower back pain. [AR 334, 370-416]  As such, Plaintiff was referred to John Aschberger, M.D., for a physiatry evaluation. [AR 334]  On November 20, 2007, Dr. Aschberger opined that Plaintiff's throaculumbar pain was "somewhat suggestive of radiculitis" and although his "overall presentation suggests some exaggerated pain behaviors," Dr. Aschberger recommended a MRI. [AR 284, 344]  Plaintiff's lumbar MRI on January 29, 2008, revealed only

a broad-based bulge and central protrusion at L4-5 causing moderate central canal stenosis impinging on the L5 nerve root, as well as a small based bulge at L3, L4 & L5 without compression of neural elements, and facet degenerative changes, mild, at L4-L5. [AR 338, 422] In February of 2008, Dr. Al Hattem, M.D. – Plaintiff's attending physician for his back pain – indicated that Plaintiff could work as long as he did not lift over 20 pounds and did not push or pull with more than 30 pounds of force. [AR 290, 293]

On March 24, 2008, Plaintiff presented to Dr. Hattem complaining of unchanged persistent lower back pain. [AR 321] Because Plaintiff was approaching maximum medical improvement on his Workers' Compensation claim – in that his condition was not helped by a course of physical therapy or an epidural steroid injection, and Plaintiff indicated that he was not interested in or a candidate for surgery – Dr. Hattem referred Plaintiff for a functional capacity evaluation. [AR 321] In April 2008, Shelley Pine, OT, performed the functional capacity evaluation, which indicated that Plaintiff could work at a sedentary physical level for eight hours per day. [AR 436-50] In her report, however, Ms. Pine indicated that Plaintiff demonstrated poor validity criteria and excessive pain behavior and "exhibited overt symptom/disability exaggeration behavior," and, as a result, "his actual physical abilities could not be determined." [AR 437]

Thereafter, on May 19, 2008, Dr. Hattem concluded that because additional conservative measures were not likely to be beneficial, Plaintiff had reached maximum medical improvement and was released on his Worker's Compensation claim. [AR 422] Dr. Hattem assigned an impairment for "abnormal lumbar motions and for specific disorders of the spine" that resulted in a "20% whole person impairment." [AR 422] With regard to Plaintiff's work capabilities, Dr.

Hattem indicated that the April 2008 functional capacity evaluation demonstrated that Plaintiff could return to sedentary level work. [AR 422]

There is no evidence that Plaintiff received any additional medical treatment until July 2009, when he presented to Denver Health with a two-hour history of non-radiating chest pain. [AR 490]  A chest x-ray and stress test were both normal, and Plaintiff was discharged with "low risk chest pain." [AR 458, 455 & 468]

In October 2009, Anthony LoGalbo, M.D. –  a state agency physician – reviewed Plaintiff's medical records and opined that Plaintiff retained the ability to perform limited light exertion work in that he could: lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk six hours in an eight hour day; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold. [AR 428-35]

At the hearing, Plaintiff testified that, due to the pain in his lower back, he could not lift more that 5-10 pounds and that his ability to sit was limited, and he could stand only 20 or 30 minutes at a time. [AR 37-38, 43]  In addition, he could walk around the block, but it would take him "a good 40 minutes [to] 50 [minutes]" and he had to lie down for 30 minutes to an hour during the day "[t]o release . . . the pressure on his back." [AR 39, 43]

### III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, the claimant is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e)&(f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since his onset date of October 7, 2007 (Step One). [AR 21]  The ALJ then determined that Plaintiff had a severe impairment of degenerative changes in the lumbar spine (Step Two).  [AR 21]  However, because the ALJ determined that he did not have a impairment or combination of impairments that meets or equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 21-22]

The ALJ then evaluated the evidence and found that Plaintiff retained the RFC to perform work at the light exertional level, except that he was limited to:  never climbing ladders, ropes, and scaffolds; occasionally climbing, stooping, kneeling, crouching, and crawling; and should avoid concentrated exposure to extreme cold (Step Three). [AR 22]  In light of Plaintiff's RFC, the ALJ found that he was unable to perform his past relevant work (Step Four). [AR 25]

The ALJ further found, however, that Plaintiff was capable of performing work that existed in significant numbers in the national economy, despite his assessed RFC, age, education and work experience. [AR 25-26]  Thus, the ALJ denied Plaintiff's application because he was not under a disability, as defined by the SSA, at Step Five of the sequential evaluation process. [AR 26-27]  On review, the Appeals Council "found no reason" to reconsider the ALJ's decision. [AR 1]

## V.  STANDARD OF REVIEW

My review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.

*Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). My review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

## VI. APPEAL

On appeal, Plaintiff first argues that the ALJ erred when determining his RFC. Specifically, he asserts that his assessed RFC is not supported by substantial evidence in that: the ALJ only gave the April 2008 functional capacity assessment results "minimal weight;" the ALJ gave "great weight" to a non-examining doctor's opinion; the ALJ's determination that Plaintiff could do a light work was not fully explained; the ALJ failed to consider his leg pain/numbness and chest pains; and the ALJ failed to consider non-medical statements in the record related to Plaintiff's limitations. Plaintiff also argues that the ALJ erred when assessing the testimony of the vocational expert, and in applying the Medical-Vocational Guidelines.

### A.  RFC Assessment:

I first address Plaintiff's argument that the ALJ erred in assessing his RFC limitations by only giving the April 2008 RFC assessment of sedentary work – performed by Ms. Pine and subsequently adopted by Dr. Hattem – minimal weight.

In his order, the ALJ indicated that he "considered this report and notes the claimant demonstrated a poor validity criteria and excessive pain behaviors. Therefore his actual physical

abilities could not be determined.  This report goes on to state the claimant exhibited overt symptoms/disability exaggeration behaviors and have very poor effort voluntary submaximal effort.  It was also noted the claimant's movements did not correlate with his reported pain ratings and that they actually appeared better than demonstrated." [AR 24]  Based on the foregoing, the ALJ accorded "minimal weight to the assessment [by Ms. Pine], and to Dr. Hattem's statement" that appeared to accept the conclusion that Plaintiff was capable only of sedentary work. [AR 24]

The ALJ's rejection of this RFC assessment is clearly supported by the record. The RFC assessment itself notes that Plaintiff's "actual physical abilities could not be determined."  To the extent that Plaintiff argues that the report contained several catagories of  criteria deemed to be validly tested – such as lifting and pinch grip tests – the ALJ's failure to specifically consider these tests in his order does not constitute error.  Rather, the report itself indicates that its collective results are not valid given the various issues with Plaintiff's efforts and exaggeration. [AR 450-51] The ALJ's reasons for giving the report minimal weight are clearly sufficient for rejecting the April 2008 RFC assessment.  *See generally Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004)(the ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources); *McGowan v. Astrue,*  2011 WL 1298901(N.D.Okla. 2011)(unpublished)(finding no error when the ALJ found that the plaintiff's exaggerated symptoms detracted from the relevance of the consultative doctors' reports).

Plaintiff also asserts that the ALJ erred in giving great weight to the opinion of Dr. LoGalbo, because Dr. LoGalbo did not exam him, and he did not consider the April 2008 RFC assessment discussed above or the medical records from Denver Health related to Plaintiff's chest

pains.

The record indicates that because the ALJ rejected the initial RFC assessment performed by the State agency in July 2008 – on the basis that the disability examiner was not a physician – the ALJ requested that a State agency physician complete a review of the entire medical evidence. [AR 24, 274]  As a result, Dr. LoGalbo submitted his RFC report on October 30, 2009. [AR 428-35]  The ALJ found that Dr. LoGalbo's opinions related to Plaintiff's functional limitations were entitled to substantial weight, as consistent and supported by the objective findings of record. [AR 25]

Contrary to Plaintiff's argument, I find that it was not error for the ALJ to give substantial weight to Dr. LoGalbo's opinion.  The ALJ first determined that Plaintiff's testimony regarding the extent, intensity and persistence of his severe limitations – including that he could lift only 5-10 pounds, sit 5-10 minutes, stand 20-30 minutes, and it took him 40-50 minutes to walk around the block – was not persuasive or credible.  In so doing, the ALJ relied on the fact that Plaintiff's subjective symptomology was disproportionate to the objective findings, as well as the various indications in the record that suggested exaggerated pain behaviors.  The ALJ noted that Plaintiff sat at the hearing for 35 minutes before needed to switch positions. [AR 23]  The ALJ then reviewed the medical records and found "minimal significant clinical findings that would support the claimant's severe subjective complaints and prevent the performance of all sustained work activity." [AR 24]  In the end, the ALJ found that the record as a whole did not support a conclusion that Plaintiff has impairment or limitations of a severity that would preclude him from performing a substantial range of activities within his assessed RFC. [AR 25]

The ALJ noted that Dr. Hattem opined that Plaintiff should not lift over 20 pounds or

9

push/pull over 30 pounds of force, and that such restrictions were "generally consistent" with the ALF's RFC assessment. However, the ALJ went on to reject Dr. Hattem's opinion to the extent he indicated that Plaintiff was only capable of sedentary work – based on Ms. Pine's April 2008 RFC assessment – as discussed above. [AR 24]

The ALJ then relied upon the RFC assessment by Dr. LoGalbo on the basis that his opinion related to Plaintiff's limitations was "consistent with the findings made in this decision [and] appears to be supported by the medical evidence of record showing minimal deficits in functioning and is based on the full evaluation of the medical evidence of record." [AR 24-25] The ALJ gave the opinion substantial weight – despite that Dr. LoGalbo was a non-examining expert source – "as it is consistent and supported by the objective findings of record." [AR 24] I find that the ALJ's order provided specific evidence and reasons, substantiated by the record evidence, to support his reliance on the opinion of Dr. LoGalbo when assessing Plaintiff's RFC. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003)(the ALJ's decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to [medical opinions] and the reasons for that weight.")

Plaintiff next asserts that the ALJ failed to explain the evidence supporting his conclusion that Plaintiff was able to perform light work (with limitations) and, in so doing, did not consider the effect of Plaintiff's leg pain/numbness and chest pains, in violation of SSR 96-8p, which requires the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence" and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe."

Initially, I disagree with Plaintiff that the ALJ failed to discuss how the evidence in the record supported his RFC assessment that Plaintiff is capable of performing light work with additional restrictions.  Moreover, I disagree that the medical records show that Plaintiff is restricted by either right leg pain/numbness or that he has been recently developing chest pains.  The medical records do not reveal any significant complaints related to Plaintiff's right leg; rather, Plaintiff himself testified that his legs had recently been bothering him. [AR 41, 22]  However, as discussed, the ALJ specifically found that Plaintiff's testimony related to his symptoms was not credible. [AR 23] As to the Plaintiff's recent chest pains, the only evidence in the record was one incident of chest pains in July of 2009, when Plaintiff reported to Denver Health after experiencing two hours of pain.  After a chest x-ray and stress test were both normal, Plaintiff was discharged with "low risk chest pain." [AR 458, 455 & 468, 490]  There is no evidence of follow-up or additional incidents, and Plaintiff did not discuss or mention any chest pain during his testimony.  Because there is no evidence of impairments from either leg or chest pain, the ALJ did not err in failing to incorporate any related restrictions or limitations in his RFC assessment under SSR 96-8p.

Finally, Plaintiff contends that the ALJ committed reversible error by failing to consider statements in the record from his wife and his friends [AR 216, 218 & 220] that indicate he is no longer able to do things that he used to do, including remaining in one position. *See* SSR 06-03p.  Although the ALJ did not specifically address these non-medical statements, which indicate generally that Plaintiff's activities had been limited after his accident at work, the evidence in the statements was simply cumulative of the Plaintiff's own testimony which was found to be not credible by the ALJ.  I note that the ALJ's order did state that he considered all of the evidence.

*See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996)(noting that while the record must demonstrate that the ALJ considered all of the evidence, an ALJ is not required to discuss every piece of evidence).

I find no error by the ALJ in his weighing of the evidence, and further conclude that the ALJ's RFC assessment was supported by sufficient evidence in the record. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009)("[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t requires more than a scintilla, but less than a preponderance").

## B. Vocational Expert:

Plaintiff also asserts that the ALJ erred in failing to ask the vocational expert if his testimony conflicted with the job requirements contained in the Dictionary of Occupational Titles ("DOT"), as is required by SSR 00-4p. However, as noted by the Commissioner, the vocational expert's testimony was consistent with the DOT requirements (for the jobs of small product assembler, cafeteria attendant, and counter attendant), and Plaintiff does not allege otherwise. Furthermore, the ALJ's order specifically indicates that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]." [AR 26] Under these circumstances, such failure to ask the vocational expert if his testimony was incompatible with the DOT – when it was not – does not constitute reversible error. *See Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009)("[a]lthough we agree that the ALJ erred by not inquiring about whether there were any conflicts between the [vocational expert's] testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts").

**C.  Grid Rules**:

Finally, Plaintiff contends that the ALJ erred in applying the Medical-Vocational Guidelines (the "Grids") to find him not disabled at Step Five.  The Grids are tables which evaluate a claimant's ability to work by matching his or her age, education, and work experience with his work capability, and set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant.  20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991); *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991); *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987).

When determining that Plaintiff could perform jobs that exist in the significant numbers in the national economy – given his age, education, work experience and RFC – the ALJ indicated that "[i]f the claimant had the [RFC] to perform the full range of light work, a finding of 'not disabled' would be directed" by Grid Rule 202.11.  However, because he has additional limitations, the ALJ relied upon testimony from the vocational expert to determine the extent to which Plaintiff's additional limitations erode the unskilled light occupational base. [AR 26]

Plaintiff contends that the ALJ erred in applying the Grid for "light work," but instead should have applied the Grid for "sedentary work" based on the ALJ's errors in assessing Plaintiff's RFC.  However, as discussed above, I find no error by the ALJ in assessing Plaintiff's RFC.

ACCORDINGLY, I AFFIRM the SSA Commissioner's final order.

Dated: July   13  , 2012, in Denver, Colorado.

                                                             BY THE COURT:

                                                               s/Lewis T. Babcock
                                                             LEWIS T. BABCOCK, JUDGE